UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMY TRAMMELL, Individually and for Others Similarly Situated,<br><br>     Plaintiff,<br>  v.<br><br>ADITI CONSULTING LLC,<br><br>     Defendant. | CASE NO. 2:25-cv-00243-RSL<br><br>ORDER DENYING JOINT MOTION TO APPROVE SETTLEMENT |

This matter comes before the Court on the parties' "Joint Motion to Approve Settlement." Dkt. 15. Plaintiff Jeremy Trammell brought this collective action under the Fair Labor Standards Act ("FLSA") on behalf of himself and other nonexempt employees of defendant Aditi Consulting LLC who were paid the same hourly rate for all hours worked, including hours worked in excess of 40 hours in a workweek. The parties are presently before the Court on their joint motion to approve their settlement agreement and authorize notice to all members of the collective. Having considered the papers submitted and the remaining record, the Court finds as follows:

## BACKGROUND

Plaintiff filed this action on February 6, 2025, asserting a single cause of action for failure to pay overtime wages under the FLSA. Aditi answered, and the Court issued a case management schedule. The joint motion for approval of the parties' settlement was filed on

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 1

September 26, 2025, more than three months before the close of discovery, and includes a request that a collective be certified for purposes of settlement. The settlement provides that Aditi will pay $295,000, which includes all amounts paid to collective members, a service award for Trammell, the costs of administering the settlement, and an award of attorney's fees and costs. Of the gross settlement amount, no more than $179,175.50 will go to opt-in plaintiffs on a *pro rata* basis calculated using their unpaid overtime hours and pay rates.[1] Plaintiff's damages model estimated that the collective was entitled to $226,918.52 in overtime pay for the three-year recovery period.

## DISCUSSION

### A. Legal Framework

The FLSA was enacted to protect covered workers from substandard wages and oppressive working hours. *See Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 739 (1981); 29 U.S.C. § 202(a) (characterizing substandard wages as a labor condition that undermines "the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers"). To advance this policy objective, the Act requires employers to pay their employees no less than a specified minimum wage for work performed, 29 U.S.C. § 206, and at least one and one-half times an employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207(a)(1). Under the FLSA, an employer who violates Section 206 or 207 is liable to the employees affected for the amount of unpaid wages or overtime compensation and for liquidated damages in an additional equal amount. 29 U.S.C. § 216(b). An employer may avoid or lessen its liability for liquidate damages by showing that it had a subjective, good faith intention to ascertain and follow the requirements of the FLSA and that it had objectively reasonable grounds to believe that its practices complied with the

---

[1] The fund is reversionary. "Settlement funds allocated to Plaintiffs who do not timely return a completed Opt-In Claim form shall revert to Aditi." Dkt. 15-1 at 5.

Act's requirements. *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 298 (9th Cir. 1996)

"The FLSA places strict limits on an employee's ability to waive claims for unpaid wages or overtime ... for fear that employers may coerce employees into settlement and waiver." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp.3d 170, 175 (S.D.N.Y. 2015) (internal quotation marks and citation omitted). *See also Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013) ("The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (finding that the FLSA prohibits waiver of the statutory minimum wage and right to liquidated damages as a check against the superior bargaining power employers generally enjoy vis-à-vis employees). Thus:

> [t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. An employee who accepts such a payment supervised by the Secretary thereby waives his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full the back wages.
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Lab.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (internal citations and footnotes omitted). "To further the FLSA's objective of protecting certain populations of workers from substandard wages and

oppressive conditions, the Supreme Court in the mid-1940s [also] rejected plaintiffs' attempts to waive claims to liquidated damages under the FLSA in private settlements." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1145 (9th Cir. 2007) (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946)).

        The Ninth Circuit has not yet identified the criteria a district court must consider when approving or denying FLSA collective action settlement agreements. Most courts in this Circuit have adopted the standard established in *Lynn's Food Stores*. See, e.g., *McDougall v. Boiling Crab Vegas, LLC*, No. 2:20-CV-01867-RFB-NJK, 2025 WL 1033905, at *1 (D. Nev. Mar. 29, 2025); *Dunne v. Quantum Residential Inc.*, No. 3:23-CV-05535-DGE, 2025 WL 896741, at *4 (W.D. Wash. Mar. 24, 2025); *Furman v. Zempleo, Inc.*, No. 23-CV-01777-AJB-DEB, 2024 WL 5048904, at *2 (S.D. Cal. Dec. 9, 2024). In reviewing a FLSA settlement, a district court must determine whether the settlement represents a fair and reasonable compromise of a *bona fide* legal or factual dispute (such as whether the FLSA applies or how many hours an employee worked), or whether it is simply a negotiated – and impermissible – waiver of FLSA guarantees. *Lynn's Food Stores*, 679 F.2d at 1354-55. While some courts find that a *bona fide* dispute exists where there is some doubt regarding either the existence or extent of the defendant's liability under the FLSA, *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp.3d 1164, 1172 (S.D. Cal. 2016); *Collins v. Sanderson Farms*, 568 F. Supp.2d 714, 719-20 (E.D. La. 2008), others have held that settlements of FLSA claims must resolve a factual dispute over something other than the Act's coverage, *Hohnke v. United States*, 69 Fed. Cl. 170, 175 (2005) (citing *D.A. Schulte*, 328 U.S. at 115). Regardless which formulation applies, "[a]ny amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA. An employee who agrees to such concessions will have effectively accepted payment below the FLSA's minimum wage in derogation of the statute and [Supreme

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 4

Court precedent]." *Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1282 (M.D. Ala. 2011). Thus, when determining whether to approve a collective action settlement under the FLSA, the Court must ensure that employees receive all amounts that are not in genuine dispute and that they obtain a fair deal regarding any additional amounts that are in controversy. *Id.* In addition, any "side deals" that confer an offsetting benefit to the employer – such as a confidentiality provision or release – must be scrutinized closely to prevent employers from extracting favorable terms in exchange for wage payments that are supposed to be mandatory and non-negotiable. *Id.*

In determining whether a proposed compromise of disputed claims is fair and reasonable, courts in the Ninth Circuit often combine the factors for assessing a proposed class action settlement under Federal Rule of Civil Procedure 23 with added considerations that promote the policy objectives of the FLSA. *Medina v. Evolve Mortg. Servs., LLC*, 718 F. Supp.3d 1162, 1171-72 (C.D. Cal. 2023). The factors courts generally consider are (1) the plaintiff's range of possible recovery, (2) the stage of proceedings and amount of discovery completed, (3) the seriousness of the litigation risks faced by the parties, (4) the scope of any release provision in the settlement agreement, (5) the experience and views of counsel and the opinion of participating plaintiffs, and (6) the possibility of fraud or collusion. *Adaway v. Aspire Loyalty Travel Sols. LLC*, No. CV-24-02792-PHX-DJH, 2025 WL 1707890, at *2 (D. Ariz. June 18, 2025); *Chery v. Tegria Holdings LLC*, No. C23-612-MLP, 2024 WL 3730981, at *3 (W.D. Wash. July 31, 2024); *Medina*, 718 F. Supp.3d at 1172; *Selk*, 159 F. Supp.3d at 1173. Taking the totality of the circumstances into account, including "the context of the case and the unique importance of the substantive labor rights involved," *Selk*, 159 F. Supp.3d at 1173, the Court must be "satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA," *Kerzich v. County of Tuolumne*, 335 F. Supp.3d 1179, 1185 (E.D. Cal. 2018) (quoting *Selk*, 159 F. Supp.3d at 1173).

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 5

### B. Bona Fide Dispute

Plaintiff Trammell alleges that he and other nonexempt employees worked more than 40 hours per week but were not paid time and a half for hours worked in excess of 40. Dkt. 1 at ¶ 97. Other than incorrectly characterizing these factual assertions as "argument and legal conclusions to which no response is required," Aditi's response to paragraph 97 of the Complaint is limited to a denial of plaintiff's ability to pursue an overtime claim in a representative capacity. Dkt. 9 at ¶ 97. Elsewhere, however, Aditi denies the assertion that it did not pay employees "overtime wages for hours worked in excess of 40 a workweek." Dkt. 1 at ¶ 5; Dkt. 9 at ¶ 5. While the Court is willing to assume that these responses are sufficient to preserve the issue for litigation, they do not show that there is a *bona fide* dispute that would justify a compromise of FLSA rights.

The FLSA requires payment "at a rate not less than one and one-half times the regular rate" for all hours worked over 40 in a workweek. 29 U.S.C. § 216(a)(1). Failure to do so makes an employer "liable to the employee ... affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). While Aditi does not concede that it failed to pay overtime wages – and to that extent, has placed the issue in dispute – there is no evidence or argument suggesting that Aditi's position has merit or that the putative dispute is *bona fide*. Aditi has not articulated the reasons for disputing its employees' right to overtime wages, *Mamani v. Licetti*, No. 13–CV–7002 (KMW)(JCF), 2014 WL 2971050, *2 (S.D.N.Y. July 2, 2014), the parties have not identified any case law or regulations raising legitimate questions over Aditi's liability, *Gutierrez v. E&E Foods*, No. 2:21-cv-00682-JNW, 2023 WL 9533758, at *2 (W.D. Wash. June 1, 2023), and there is no indication of a dispute regarding the number of hours worked or the relevant rates of pay. If there is no legitimate question regarding the employee's right to compensation under the FLSA, a court will not approve a settlement because to do so would allow the employer to avoid the

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 6

full cost of complying with the statute. *Kerzich*, 335 F. Supp.3d at 1184. *See also Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 41 (E.D.N.Y. 2014) ("Without judicial oversight ... employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with [FLSA]."); *Hogan*, 821 F. Supp.2d at 1282 ("Any amount due that is not in dispute must be paid unequivocally; employers may not extract valuable concessions in return for payment that is indisputably owed under the FLSA."); *Dees v. Hydradry, Inc.*, 706 F. Supp.2d 1227, 1237 (M.D. Fla. 2010) ("An employer who pays less than the minimum wage or who pays no overtime has no incremental incentive to comply voluntarily with the FLSA, if, after an employee complains, the employer privately compromises the claim for a discount-an amount less than the full amount owed under the FLSA . . . ."). In the absence of a *bona fide* dispute, the settlement agreement appears to be the sort of "mere waiver" or compromise of FLSA rights that is clearly prohibited. *Abrego v. Yu Lin, Corp.*, 317 F. Supp.3d 298, 303 (D.D.C. 2018) (citing *O'Neil*, 324 U.S. at 707).

### C. Fair and Reasonable

If, as here, the Court determines that the threshold requirement of a *bona fide* dispute is not met, it need not analyze the settlement agreement for indicia of fairness and reasonableness. *See Abrego*, 317 F. Supp.3d at 302; *Hernandez v. Stringer*, 210 F. Supp.3d 54, 62 n.6 (D.D.C. 2016). Given that the parties may resubmit their settlement agreement for approval with evidence showing that the existence or extent of Aditi's FLSA liability is, in fact, subject to *bona fide* dispute, the Court will briefly note two other areas of concern.[2]

First, the proposed settlement does not address liquidated damages and appears to be a complete and total waiver of the penalty.

---

[2] This discussion is not exhaustive.

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 7

> The FLSA typically allows plaintiffs to recover double damages, awarding both the actual damages and an equivalent amount in liquidated damages. *See* 29 U.S.C. § 216(b); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) ("Double damages are the norm; single damages the exception."); *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996) (same); *see also Alvarez v. IBP, Inc.*, 339 F.3d 894, 910 (9th Cir. 2003).
>
> Employers may seek to establish a good faith defense to the liquidated damages component under the FLSA, but bear the burden of showing they acted with both objective and subjective good faith in their violation of the FLSA. *See* 29 U.S.C. § 260; *Local 246*, 83 F.3d at 298.

*Kerzich*, 335 F. Supp.3d at 1190. Even if there were some reason to believe that Aditi could meet its burden of establishing the good faith defense by showing that it took the steps necessary to ascertain what its obligations were under the FLSA and to ensure that its practices were compliant, some discounting of liquidated damages might be warranted in light of the settlement, but completely excluding them from the calculation of potential damages against which the reasonableness of the settlement amount would be compared is most likely inappropriate. *Id*. at 1190-91.[3]

Second, the scope of the release provisions proposed by the parties appears to be a forfeiture of claims and rights that are not at issue in this litigation. This case involves a

---

[3] After reviewing Aditi's pay records, plaintiff's counsel estimated that the collective members lost back wages in the amount of $226,918.50 for the statutory recovery period. It is this number against which the gross settlement amount of $295,000 and net settlement amount of $179,176.50 are compared in the moving papers, producing "a total recovery of 79% of [opt-in plaintiffs'] possible three-year back wages." Dkt. 15-3 at ¶ 40. There is no discussion of or calculation related to liquidated damages.

The Court acknowledges that the settlement amount will be distributed to collective members in two settlement checks, with the second check treated as a liquidated damages payment for tax purposes. Dkt. 15-1 at 6. This appears to be an accounting decision unrelated to amounts owed under the FLSA or the parties' negotiation of a gross settlement amount. In fact, the parties proposed an opt-in claim form that does not mention liquidated damages either in the explanation of how each plaintiff's settlement share amount is calculated or the description of the release plaintiffs must provide to take part in the settlement. If the Court were to assume that the settlement consists of a 39.5% recovery of back wages and a comparable 39.5% recovery of liquidated damages, the parties have made no effort to justify such a significant discount based on the facts of this case and the risks of this litigation.

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 8

single claim for overtime wage payments. To participate in the settlement, however, plaintiff Trammell must release all claims and causes of action "of whatever kind or character, whether known or unknown, . . . based on facts occurring prior to the Effective Date" of the settlement. Dkt. 15-1 at 5. The release is expansive and forces Trammell to give up all manner of tort, contract, and statutory claims. The obvious concern with these sorts of provisions is that they "effectively allow employers to use employee wages— wages that are guaranteed by statute—as a bargaining chip to extract valuable concessions from employees." *Selk*, 159 F. Supp.3d at 1178. For their part, absent collective members are required to "release Aditi and its related entities from all federal and applicable state and local wage and hour actions" and causes of action, including claims involving "improper classification, failure to pay wages, failure to pay for meal/rest breaks, failure to pay overtime and/or premium rates, failure to provide timely and accurate wage notices, failure to provide timely and accurate wage statements, or otherwise relate to scheduling, payment of wages and/or overtime, and failure to timely pay wages . . . ." Dkt. 15-1 at 5-6. "[W]hen a FLSA settlement provides that opt-in members will receive unpaid wages and related damages, but nothing more, a release provision should be limited to the wage and hour claims at issue." *Selk*, 159 F. Supp.3d at 1178. *See Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1352 (M.D. Fla. 2010) ("[A] pervasive release in a FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer."). As proposed, opt-in plaintiffs will be required to give up every type of wage claim in order to be compensated for overtime losses. Such an incongruity between the claim being pursued in the litigation and the claims released in the settlement gives rise to a presumption of unfairness that has not been rebutted in this case.

//

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 9

For all of the foregoing reasons, the parties' "Joint Motion to Approve Settlement," Dkt. 15, is DENIED without prejudice.

Dated this 14th day of October, 2025.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING JOINT MOTION TO APPROVE
SETTLEMENT - 10